**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gerald Patrick HEMMING,**
**Defendant-Appellant.**

**No. 78-5113.**

United States Court of Appeals,
Fifth Circuit.

April 6, 1979.

Theodore J. Sakowitz, Federal Public Defender, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Linda C. Hertz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Gerald Patrick Hemming appeals from a judgment of conviction entered after a jury trial. Hemming was charged, along with Benton Franklin Thomas, Joseph Thomas Oliveti, and Jacob Cochran, in a one-count indictment with knowingly and intentionally conspiring to import into the United States cocaine and marijuana in violation of 21 U.S.C. § 963. The District Court severed the defendants for trial, and the convictions of Thomas and Oliveti have been affirmed on appeal.[1] *United States v. Thomas*, 567 F.2d 638 (5th Cir. 1978). Hemming, who was tried alone, now complains that (1) a cautionary instruction explaining the limited use of hearsay in a conspiracy case was fatally defective; (2) the legally competent evidence was insufficient to support his conviction; and (3) the District Court committed plain error in admitting into evidence prejudicial testimony from Government witnesses pertaining to the ownership and sale of a rifle with a silencer and telescope when the only crime charged against him was that of conspiracy to import drugs. Finding merit in his first argument, we reverse his conviction and remand for a new trial.

## I. *The Facts*

The Drug Enforcement Administration (DEA) began a narcotics investigation, with agents posing as individuals interested in purchasing large quantities of cocaine, in November of 1975. Ten months later, the investigation culminated in the return of the indictment against Hemming, Thomas, Oliveti, and Cochran. During this ten-month period, there were numerous meetings and a lot of talk, usually by Thomas, about supplying contraband and planes and boats transporting kilos of cocaine and tons of marijuana, but no contraband was ever produced by any of the men charged in the indictment. There were approximately fifteen or sixteen meetings between DEA undercover agents and Thomas, with Oliveti in attendance at three of them and Cochran present at four. The agents had only one meeting with Thomas where Hemming was present, although Thomas repeatedly referred to Hemming during other meetings as his closest associate in the drug smuggling operation. There is a conflict between Hemming's testimony and the DEA agents' testimony as to the substance of the single conversation in which Hemming participated. Hemming testified that he was present for the sole purpose of helping Thomas, his acquaintance of seven years,[2] secure a loan with his airplane as collateral. He claims to have been perplexed by the DEA agents' references to drug smuggling. The agents, on the other hand, recalled the gist of the conversation as being drug related, with Hemming offering assurances of the quality of the security and contacts in his and Thomas' drug smuggling operation.

---

1. Cochran was to have been tried with Thomas and Oliveti, but he failed to appear and apparently remains a fugitive from justice.

2. There is no indication that Hemming knew Oliveti or Cochran prior to their indictment.

The only other nonhearsay evidence offered against Hemming by the Government related to his alleged participation in the sale of a high powered rifle with a silencer and telescope. In the course of the investigation, the agents discussed with Thomas, as they stood in the parking lot of a bar, their interest in purchasing such a weapon. When one of the agents asked to see the rifle and silencer, Thomas stated he would first have to go inside and speak with his partner. Shortly thereafter, Hemming came out of the bar, took something that was wrapped in a white sheet out of his car and placed it in the trunk of Thomas' car. Thomas then drove the agents to a test site to fire the weapon, where he removed from the trunk a .22 caliber rifle and a silencer that was wrapped in a white sheet.

Our brief review of the facts reveals that a great majority of the evidence concerning the drug smuggling conspiracy and Hemming's participation therein came from extrajudicial hearsay statements of alleged coconspirators. The agents repeatedly testified, over Hemming's objection, to statements made by Thomas concerning the drug smuggling operation and the major role Hemming played in it. The District Court recognized that the statements were hearsay, but admitted the evidence conditionally, subject to prima facie proof of the conspiracy, and gave an accompanying limiting instruction.

## II. *The Instruction in Light of Apollo*

Though he did not object at trial to the content of the instruction given, Hemming now contends that the instruction was incomplete under *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973).

■ Although *Apollo* has recently been criticized and overruled by the *en banc* Circuit Court in *United States v. James*, 590 F.2d 575 (5th Cir. 1979), *James* is specifically prospective. This case is thus subject to the requirements of *Apollo*.

■ In *Apollo*, we recognized a minimum obligation on the trial judge in a conspiracy case in which extrajudi-

cial statements of alleged coconspirators are proffered to give a cautionary instruction on the limited uses of hearsay testimony, explaining clearly to the jury the requirement that the conspiracy itself and each defendant's participation in it must be established by independent nonhearsay evidence which must be given either prior to the introduction of any evidence or immediately upon the first instance of such hearsay testimony.

476 F.2d at 163. The failure to give such a cautionary instruction when the hearsay is first proffered is error, and instruction at the end of trial does not necessarily cure the error. *United States v. Brown*, 555 F.2d 407, 423 (5th Cir. 1977); *United States v. Apollo*, 476 F.2d at 163–64.

■ When the Government first sought to introduce hearsay statements of alleged coconspirators, Hemming objected and the District Court instructed the jury as follows:

Ladies and gentlemen of the jury, let me say this to you at this point: Mr. Hemming has made what is called a hearsay objection. I am sure some of you are familiar with that term.

The charge in this case is conspiracy. Now, under our rules of law, if a conspiracy is at some point in this case established, at least from a prima facie standpoint, there is sufficient evidence to go to you to decide the matter, it is permissible to offer the statements of other parties to the alleged conspiracy, even though they may be hearsay.

Now, in the event that prerequisite, that is, presenting sufficient evidence to establish a prima facie case of conspiracy, is not met by the Government, then, I will strike all hearsay testimony that's been presented by the alleged conspirators.

If the Government does establish, at least prima facie evidence so that you may decide that issue, then, I am going to permit such testimony.

I am going to permit it now, even though it is hearsay, subject to the possibility of it being stricken at a later time

or not stricken, depending on how the case develops.

So, we will receive this testimony conditionally at the moment, but we will receive it.

Go ahead, sir.

We agree with the appellant that this instruction did not clearly explain to the jury, in accord with *Apollo*, that the conspiracy itself must be established by *independent nonhearsay evidence before* the hearsay testimony may be considered in the case against the defendant. Neither does the instruction explain that the conspiracy must be established beyond a reasonable doubt before the hearsay may be considered. It must also be established by independent evidence that the defendant and declarant were both members of the conspiracy and that the declaration was made in the course of and in furtherance of the conspiracy. *United States v. Brown*, 555 F.2d at 423. The shortcomings of the instruction given are even more apparent when one considers the total lack of reference to these latter requirements. Furthermore, the instructions at the end of the trial do not adequately correct these insufficiencies.

■ Our inquiry does not end here, however, for Hemming neither requested a correct *Apollo* instruction at the time the hearsay was proffered nor objected to the incomplete one given by the District Court. Thus, we can reverse only if the District Court's failure to give a complete instruction *sua sponte* constitutes plain error which significantly and substantially prejudiced Hemming. *United States v. Ashley*, 569 F.2d 975, 985–86 (5th Cir. 1978); *United States v. Rixner*, 548 F.2d 1224, 1227–28 (5th Cir. 1977); *United States v. Moore*, 505 F.2d 620, 624 (5th Cir. 1974); Fed.R.Crim.P. 52(b). This record reveals that nonhearsay evidence supporting the existence of a conspiracy and Hemming's membership in it was far less than the other evidence under consideration in this discussion. Indeed, the

vast amount of evidence in this trial would have been inadmissible hearsay unless it met the strict standards of admissibility under the old coconspirator exception to the hearsay rule, now Rule 801(d)(2)(E) of the Federal Rules of Evidence.[3] Under such circumstances, this defendant was particularly entitled to have the jury clearly instructed on the criteria for consideration of these statements. In the context of this case, we must conclude that the District Court's effort to give *Apollo* instructions fell short of the mark and subjected the appellant to manifest prejudice. As we noted earlier, this Circuit has since recognized *Apollo*'s deficiencies as a guide for the trial courts and has replaced its approach to determining admissibility with that set forth in *James*. In a new trial, the judge will apply the same criteria under *James* rather than instructing the jury as to how to apply them under *Apollo*.

### III. *The Sufficiency of the Evidence*

■ We reach Hemming's argument that there was insufficient evidence. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Viewing the nonhearsay evidence against Hemming in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), there is sufficient evidence in the record to support the conviction.[4]

### IV. *The Weapons Testimony*

■ Counted among the nonhearsay evidence reviewed in the preceding portion of this opinion is that testimony which relates to the sale of the rifle with the silencer and telescope. Hemming contends that the admission of this evidence, without objection at trial, was prejudicial and amounted to plain error. In the context of the evidence presented at trial, including Hemming's testimony that his only connection with the DEA agents was to aid Thomas in securing

---

3. Statements meeting those standards are actually considered not hearsay by virtue of the Federal Rules.

4. Our conclusion does not mean, of course, that a jury would necessarily credit the Government's version of the facts and convict Hemming on the nonhearsay evidence alone.

a loan using his airplane as collateral, we find that the evidence relating to Hemming's role in the sale of the weapon was admissible. Upon retrial, the District Court should determine the relevance of the weapons testimony in light of the evidence then in the record.

## V. *Conclusion*

Having found Hemming's contention regarding the insufficient *Apollo* instruction to be meritorious and his contention regarding the insufficiency of the evidence to be without merit, we reverse and remand for a new trial.

REVERSED and REMANDED.