Terry Wayne HOOKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 59279.

Court of Criminal Appeals of Texas, Panel No. 2.

June 18, 1980.

Rehearing Denied Sept. 23, 1981.

Charles M. McDonald, Waco, for appellant.

Felipe Reyna, Dist. Atty., and Lynnan Locke Kendrick, Asst. Dist. Atty., Waco, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for injury to a child. The jury assessed punishment at twelve years and a $6,000.00 fine.

■ In his first ground of error, Hooker contends that the trial court erred in overruling his motion for a change of venue. The motion was properly supported by an affidavit signed by two persons and was denied without an evidentiary hearing. No controverting affidavits had been filed by the State.

This is the identical issue posed in *Hussey v. State*, 590 S.W.2d 505 (Tex.Cr.App.1979), where we held that it had been long established that a defendant was entitled to a change of venue as a matter of law when the State fails to challenge the motion either by controverting affidavits or by evidence presented at the hearing on the motion. The failure to grant the change of venue is reversible error. See also *Durrough v. State*, 562 S.W.2d 488 (Tex.Cr.App. 1978).

The judgment is reversed and remanded.

PHILLIPS, J., not participating.

Before the court en banc.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

■ On original submission this cause was reversed in a panel opinion for the failure to grant a change of venue. On rehearing appellant does not disagree with that result, but insists that he is entitled to have his challenge to the sufficiency of the evidence considered, as the lack of sufficient evidence to sustain the conviction would bar a retrial while reversal based on the venue question would not. See *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). It now appears clear that in view of *Burks* and *Greene* a challenge to the sufficiency of the evidence should be considered before disposing of a case even though the reversal may be based on another ground. *Swabado v. State*, 597 S.W.2d 361, 364 (Tex.Cr.App. 1980); *Watson v. State*, 605 S.W.2d 877

(Tex.Cr.App.1979). See *United States v. Till*, 609 F.2d 228, 229 (5th Cir. 1980); *United States v. Miranda*, 593 F.2d 590, 595 (5th Cir. 1979); *United States v. Hemming*, 592 F.2d 866, 870 (5th Cir. 1979). See also *United States v. Gallagher*, 602 F.2d 1139 (3rd Cir. 1979); *United States v. Orrico*, 599 F.2d 113, 115 (6th Cir. 1979); *United States v. Santora*, 600 F.2d 1317, 1321 (9th Cir. 1979); *United States v. Morris*, 612 F.2d 483, 491 (10th Cir. 1979); *United States v. McManaman*, 606 F.2d 919, 927 (10th Cir. 1979).

We shall therefore consider appellant's challenge to the sufficiency of the evidence which the panel opinion failed to consider.

Appellant was convicted of "reckless" injury to a child under V.T.C.A., Penal Code, § 22.04 (1974).[1] Punishment was assessed by the jury at 12 years' imprisonment and a $6,000.00 fine.

Said § 22.04 (1974) provides:

"(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct that causes serious bodily injury, serious physical or mental deficiency or impairment, or deformity to a child who is 14 years of age or younger.

"(b) An offense under this section is a felony of the second degree."

Omitting the formal parts, the indictment alleged the appellant on or about December 13, 1976 "did then and there recklessly engage in conduct which caused serious bodily injury to Michael Hooker, a child then and there younger than fourteen (14) years of age, and which conduct consisted of placing the said Michael Hooker into a bathtub containing a quantity of water which was sufficiently hot to cause burns resulting in serious bodily injury to the said Michael Hooker...."

V.T.C.A., Penal Code, § 6.03 (Definitions of Culpable Mental States), provides in Subsection (c):

"(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

V.T.C.A., Penal Code, § 1.07(a)(34), provides:

"(34) 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Appellant contends that the State failed to prove that the child received a serious bodily injury and failed to show that the act, if any, was done with the culpable mental state of "recklessly."

Dr. James L. Gilchrist was on duty at the emergency room of the Providence Hospital in Waco on December 14, 1976. About 5:05 p. m. he was asked to examine two-year-old Michael Hooker, who had just been brought to the emergency room by appellant and his wife. Dr. Gilchrist testified the child was suffering from second degree burns primarily over the back part of his body, from about mid-calf to superior aspect of his shoulders. The burns were around his mid-portion to some extent and his thighs. The burns were sharply demarcated and very red. The doctor observed that neither the feet nor the hands were burned. The doctor indicated the sharp demarcation of the burns meant the child had been burned by very hot water, and that the body had not been in the water for a long period, or whatever length of time it was in the water, the body was in at approximately the same position.

Dr. Gilchrist testified that the situation demanded a quick evaluation as the child

1. The offense was shown to have occurred on December 13, 1976. Therefore, the offense occurred before the amendment to said § 22.04

(Acts 1977, 65th Leg., p. 2067, ch. 819, § 1, eff. Aug. 29, 1977).

"was more ill than what a number of patients that we see are." He stated that the child had a low white blood cell count, suggesting a number of possible medical problems. He observed the child was lethargic, thus his responsiveness was decreased, and when blood was withdrawn he did not cry as would have been normal for a two-year-old child.

Appellant, father of the child, told Dr. Gilchrist at the hospital that on the previous day, December 13th, some 24 to 30 hours earlier, he had drawn water in the bathtub to wash diapers. He had left the water standing for about 30 minutes when he told Michael to get in the tub, and he later pulled the child out when the child began crying. The doctor expressed surprise at the redness of the burns if the water had been standing for 30 minutes. Appellant's wife, Karen, told the doctor she had drawn the water for her own bath. The doctor called the McLennan County Child Welfare Department and ordered the child transferred to the youth division of the Hillcrest Hospital.

Martha Kemp, a registered nurse for 40 years, and evening hospital supervisor at Providence Hospital for 16 years, went to the emergency room on December 14, 1976, where she saw Michael Hooker. There were sharp lines of the burns on the body and the burns were dark bright red. She observed that there were no burns on the child's feet, hands or face.

She testified Michael had temperature above normal, was lethargic and didn't respond when spoken to.

Nurse Kemp couldn't figure just how the child could have been burned as he was. The burn line indicated there were not splash burns as if the child had been thrashing about, and if he had gotten in by himself his feet would have been burned, and if he had fallen in his hands would have been burned. She stated someone larger than the child could have placed the child in the tub by holding him by his hands and ankles.

Kemp related when she asked the appellant what happened he seemed agitated and stated, "It's my fault, I did it." The police were called.

Susan Blair, investigator from the Child Welfare Unit, came to the Providence Hospital and observed the child and his burns. Appellant told her he told the child to get in water he had left standing for 30 minutes which he had originally drawn to wash diapers and that when the child started crying he took the child out of the tub and dried him off, noticing blisters and skin slipping. Appellant's wife told Blair the water was for her, and appellant told the child to get in the water thinking the tub had been filled for the child's bath. Later the wife told Blair she was not present when the burns occurred.

Blair related the Child Welfare Unit took custody of the child, and she, her husband and appellant's wife took the child from Providence to Hillcrest Hospital in the early morning hours on December 15, 1976.

Michael Henry Garibay, Waco City police officer, testified he went to Providence Hospital Emergency Room on December 14, 1976. Appellant told Garibay the child had dirtied his diapers and he was preparing to wash the child in the tub and had let the water run for 20 minutes before he placed the child in the tub. Appellant's wife told Garibay she was cleaning diapers in the commode and appellant was preparing a bath for the child, and when the child got in the tub he received the burns. When it was pointed out to her there were conflicting stories, she became nervous and did not talk to Garibay again.

Dr. Martha Jean Harris, a resident family physician at the Hillcrest Hospital, testified that on December 15, 1976, she was asked by a nurse to see Michael Hooker "right away as he was rather ill." She testified he had second degree burns over 38% of his body, that he was vomiting and his fingers were bluish in color indicating decreased oxygenation. His appearance was "very sick."

She noted the sharp demarcation of the burns and the fact that the hands, feet, face and his genitals were not burned. She stated if the child had thrashed about in the

water the burns would have been different and his genitals would have been burned. Dr. Harris surmised the child's legs were held together and this prevented his genitals from being burned while in the hot water.

Dr. Harris stated the child's injuries were such as to cause a serious threat of death, and that his life was in jeopardy except for the excellent medical care he received. After consultation with two supervising physicians, it was agreed that Michael Hooker's condition was such that he needed to be transferred to a hospital which cared for severely burned individuals. Parkland Hospital in Dallas agreed to accept the child. Among the medical problems resulting from the burns, Harris stated, was the maintenance of body fluids and the prevention of dehydration and infection.

Due to the child's critical condition, Dr. Harris and another physician rode in the ambulance with the child from Waco to Dallas. Special medical equipment was taken along in anticipation of a change in the child's medical condition during the trip. Upon examination after arrival Parkland Hospital listed the child "as in serious to critical condition" according to Harris.

Susan Blair testified that Michael Hooker was in Parkland Hospital until January 4, 1977, and that he had been placed in a foster home after his release. She stated he had healed "very well" although there was still pink discoloration of the skin and some scarring.

The appellant did not testify or call any witnesses at the guilt stage of the trial.[2] Through cross-examination of the State's witnesses, testimony was developed that 22-year-old appellant suffered from juvenile onset diabetes at age 12 which can affect the peripheral nervous system, causing numbness in the extremities. However, there was no evidence at the guilt stage of the trial that appellant experienced any loss of feeling in his hands at the time his son was burned.

In its charge the court defined "serious bodily injury" and "recklessly" in accordance with the statutes, applied the law to the facts and submitted the case to the jury on the law of circumstantial evidence. The jury found the appellant guilty.

█ In a circumstantial evidence case, the State need not present evidence excluding every conceivable hypothesis except that of defendant's guilt, it need only present evidence excluding every reasonable hypothesis. *Faulk v. State*, 608 S.W.2d 625 (Tex.Cr.App.1980); *Phelps v. State*, 594 S.W.2d 434 (Tex.Cr.App.1980); *Plunkett v. State*, 580 S.W.2d 815 (Tex.Cr.App.1978); *Easley v. State*, 564 S.W.2d 742 (Tex.Cr. App.1978); *Stogsdill v. State*, 552 S.W.2d 481 (Tex.Cr.App.1977); *Flores v. State*, 551 S.W.2d 364 (Tex.Cr.App.1977).

█ Each fact need not point directly and independently to the guilt of the accused, as the cumulative effect of all the incriminating facts may be sufficient to support the conviction. *Plunkett v. State*, supra; *Easley v. State*, supra; *Stogsdill v. State*, supra; *Flores v. State*, supra. Furthermore, every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Faulk v. State*, supra; *Earnhart v. State*, 575 S.W.2d 551 (Tex.Cr.App.1979); *Moore v. State*, 532 S.W.2d 333 (Tex.Cr.App.1976).

In reviewing a challenge to the sufficiency of the evidence, this court must consider the jury's verdict in light of the evidence most favorable to the verdict.

---

2. At the penalty stage appellant testified that he was home on December 13, 1976, with two-year-old Michael and four-year-old Monica, while his wife was at work. He admitted he placed Michael in the tub and the child cried and "threw a fit," but he assumed it was because Michael didn't want to have his hair washed. When from another room he heard the child still yelling, he returned to the bathroom and pulled the child out. He acknowledged that sometime previous thereto he had raised the temperature gauge on the hot water heater to a "high" position. He denied knowing the water was too hot when he placed Michael in the tub. This evidence was, of course, not before the jury at the time the jury passed on the question of guilt.

■ Without recounting the details of the second degree burns suffered by the child over 38% of his body, and observing that when asked the unusual pattern of burns the appellant stated "It is my fault, I did it" along with the other facts and circumstances, we conclude the evidence was sufficient to exclude every other reasonable hypothesis except that the appellant was guilty of the offense charged and was sufficient to support the jury's verdict. Appellant's contention as to sufficiency of the evidence is overruled.

Appellant's motion for rehearing on this basis is denied.