**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Floyd R. BELL, Defendant-Appellant.**

No. 79–5111.

United States Court of Appeals,
Fifth Circuit.

June 1, 1981.

Michael Jay Rune, Dallas, Tex. (Court-appointed), for defendant-appellant.

Arnaldo N. Cavazos, Jr., D. Mark Elliston, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before JONES, BROWN and RUBIN, Circuit Judges.

PER CURIAM:

Convicted by a jury on 11 counts of mail fraud and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 371, Floyd R. Bell appeals his conviction and the 25 year sentence imposed on him. Finding that the trial was fair and that the district judge did not err in any of the matters complained of, we affirm.

Construed most favorably to the prosecutor's interpretation, as it must now be in light of the jury verdict of guilty, see *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the evidence supports the following factual account. In December 1976, Bell organized a Texas corporation, Advance Business Concepts (ABC), for the purpose of selling distributorships for the sale of self-watering flower pots to persons who wanted to go into business for themselves. He and several other officers and employees of ABC operated the company until March 1978, when the Texas Attorney General obtained a state court injunction against its continuance.

Bell and his codefendants, one of whom was a principal witness against him, trained salesmen, most of whom were ingenuous, to parrot a high pressure sales talk to potential purchasers of distributorships. The sales talk included many statements known by Bell to be false. These included representations that the flower pots were the subject of a pending patent application; that ABC was a well established company whose management had been connected with a nationally known firm; that certain persons, identified by name, had been successful as distributors; that the self-watering pots would be delivered within 60 days; and that the product would be widely advertised. The persons named as successful distributors were shills, paid, if a prospect communicated with them, to represent untruthfully that they were distributors and

had been financially successful. In truth there were no successful distributors.

While Bell received only about $600,000 of the funds collected from December 1977 to March 1978, 171 persons from 31 states paid a total of over $1,000,000 for distributorships. Some of the investors never received any flower pots. Others received partial shipments of defective pots that lacked the purportedly unique self-watering liner.

Bell challenges neither the sufficiency of the evidence nor the jury charge. Attacking the conviction, he contends only that, first, the court improperly admitted the declarations of co-conspirators before the prosecution had established sufficiently, outside the jury's presence, the existence of a conspiracy, Bell's membership in it and that the statements attributed to him were made in furtherance of it; and, second, the court improperly failed to give a conspiracy instruction to the jury before admitting the hearsay. Attacking the sentence, he contends that the court relied on undisclosed portions of a pre-sentence report.

In *United States v. Apollo,* 476 F.2d 156, 162–64 (5th Cir. 1973), we held that, before admitting the hearsay declarations of co-conspirators in a conspiracy trial, a trial court was required to give a limiting instruction to the jury.[1] Five years later, a panel reconsidered *Apollo* in light of the promulgation of Rules 104(c) and 801(d)(2)(E), Fed.R.Evid., and held that a trial judge should, instead, before admitting such evidence, make a threshold determination of whether the government has proved by a preponderance of the evidence the predicates for the admissibility of such testimony. *United States v. James,* 576 F.2d 1121, 1130 (5th Cir. 1978). The court voted to rehear *James* en banc on August 7, 1978, see *United States v. James,* 576 F.2d 1121, 1132 (5th Cir. 1978) (en banc). At the time the rehearing was granted, the panel decision was not vacated, although we later adopted a rule that the Court's decision to

---

1. The limiting instruction was intended to explain to the jury that the conspiracy must be established by independent nonhearsay evidence before any hearsay testimony could be considered against the defendants.

rehear a case en banc automatically vacates the panel decision. Local Rule 17, adopted December 15, 1978. *See also United States v. Patton*, 594 F.2d 444 (5th Cir. 1979).

Bell was tried after *James* was voted en banc, but before it was decided. Subsequently, the panel decision in *James* was affirmed by the en banc Court, but different requirements for the conduct of a conspiracy trial were announced. *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).[2] We limited the effect of that decision to future cases. *Id.* at 575. Therefore, the rules applicable to the present trial were those set forth in *Apollo*. *United States v. Hemming*, 592 F.2d 866, 869 (5th Cir. 1979).

█ Assuming that the instruction given the jury on admitting the evidence was *Apollo*-deficient, the final jury charge is not impugned. The question now raised is the sequence of the testimony: that an adequate foundation was not raised *before* testimony was admitted. By the time the case went to the jury, however, an unquestionably adequate foundation for the evidence had been laid.

The further objection now made is that the procedure was not fundamentally fair. *See United States v. Ashley*, 569 F.2d 975, 985–86 (5th Cir. 1978). We fail, however, to perceive any unfairness in the trial. A mere alteration in the proper sequence of trial and the failure to give a preliminary charge do not taint what was otherwise a fair trial followed by an unexceptionable jury charge. The error in failing to give a preliminary instruction was, therefore, harmless. *United States v. Hemming*, 592 F.2d 866, 870 (5th Cir. 1979).

Moreover, little of the challenged testimony was the kind of co-conspiratorial declaration considered in *Apollo* and *James*. Much of it was the direct testimony of a co-conspirator concerning what he and Bell had done. This was not the recount of extra-judicial recitals by a co-conspirator.

*Compare United States v. Apollo*, 476 F.2d 156, 163 (5th Cir. 1979). The remainder of the challenged statements were not admitted to prove the truth of the representations, but only to demonstrate that these statements had in fact been made. Indeed, it was their untruth that was sought to be demonstrated. They were not hearsay. Rule 801(d), F.R.Evid. *See also United States v. McDonnel*, 550 F.2d 1010, 1012 (5th Cir. 1977), *cert. denied*, 434 U.S. 835, 98 S.Ct. 123, 54 L.Ed.2d 96 (1977). The conviction is, therefore, affirmed.

Bell also argues that his sentence should be vacated and the case remanded for resentencing. He asserts that the trial judge violated Fed.R.Crim.P. 32(c)(3) by failing to supply him with at least a summary of the first of two presentence reports that were made available to the sentencing judge. *See also* Fed.R.Crim.P. 32(c)(3)(B). When Bell, represented by counsel, appeared for sentencing, the following colloquy occurred:

[DEFENSE COUNSEL]:

I would like to inquire of the Court, has the Court considered the PSI report as turned in by the PSI office? Have you read it and considered it at this point in time?

[THE COURT]:

I have. There are two reports that I received from the Probation Officer. One is the earlier report prepared June 11, 1975 in the earlier Federal crime and then I have one dated January 16, 1979.

The defendant and his lawyer were thus made aware, before Bell was sentenced, that the judge had consulted the pre-sentence investigation prepared in 1975 in connection with another offense, and an investigation made in 1979 for the purpose of sentencing him on the conspiracy and mail fraud convictions. Bell was furnished a summary of the later report and, at allocution, was given ample opportunity to challenge it. In fact, he persuaded the trial

---

2. For a comprehensive discussion of *James* and the issue of coconspirator hearsay, see Comment, Reconstructing the Independent Evidence Requirement of the Coconspirator Hearsay Exception, 127 U.Pa.L.Rev. 1439 (1979).

judge that certain parts of it should be disregarded.

He challenges, however, the judge's consideration of the earlier report because a summary of it was not made available to him. At no time prior to sentencing did Bell ask to see the 1975 report or object to the Court's review of it.

█ The Federal Rules of Criminal Procedure require only that, "[b]efore imposing sentence the court shall *upon request* permit the defendant, or his counsel if he is so represented, to read the report of the presentence investigation exclusive of any recommendation as to sentence ..." Rule 32(c)(3), F.R.Crim.Pro. (Emphasis Supplied). The defendant and his counsel were made aware of the existence of the 1975 report and did not ask to see it or to be provided with a summary. The sentencing judge is not required to do more than call the existence of the report and the fact that the court has examined it to the attention of the defendant and his counsel. Before the provisions of Rules 32(c)(3)(A) & (B) are engaged, the defendant or his attorney must request disclosure of the information contained in the presentence report. Therefore, we perceive no violation of the rule's command. Moreover, no prejudice as a result of the court's examination of the 1975 report has been alleged or shown.[3]

For these reasons the judgment is AFFIRMED.

---

**3.** The government, in its brief before this Court, stated that Bell's access to the 1975 report would not be denied. Bell's post-sentencing motion to see it was denied by the trial judge without prejudice because the motion did not comply with the local rules of the district court. That motion was never renewed. If misinformation is included in the report, the district court will have 120 days from the date our mandate is issued to correct the sentence, if it was imposed illegally. *See* Rule 35, Fed.R.Cr. Pro.