**Vince Arthur HALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–88–0053–CR.**

Court of Appeals of Texas, Amarillo.

Dec. 30, 1988.

Lonnie Markley, Amarillo, for appellant.

Jon R. Waggoner, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

By a two-paragraph indictment, appellant Vince Arthur Hall was accused of aggravated sexual assault upon three-year-old E__ M__ P__ by causing (1) contact of her sexual organ with his penis, and (2) the penetration of her anus. A jury found appellant guilty as charged in the indictment, and assessed his punishment at confinement in the Texas Department of Corrections for eighteen years.

In his appeal from that conviction, appellant presents seven points of error in which he contends: 1–2) the trial court erred in excluding the videotaped interview of the three-year-old complainant, made by the Department of Human Services (DHS) one day after the alleged offense; 3–4) the evidence is insufficient to prove either paragraph in appellant's indictment for ag-

gravated sexual assault; 5) the testimony of complainant's twelve-year-old cousin was hearsay and inadmissible because the State did not establish that the testimony met the "excited utterance" exception; and 6–7) articles 28.10 and 28.11 of the Code of Criminal Procedure are unconstitutional. We will reverse and remand.

The evidence established that appellant was the former boyfriend of Willie Mae Ross. Ross testified that on January 21, 1987, she resided at 507 North Monroe in Amarillo, with appellant, Betty Collins and several children, one of whom was Collins' three-year-old daughter E__ M__ P__. Appellant, who would occasionally babysit the smaller children, was doing so on January 21, 1987 while Ross was attending school and Betty Collins, the complainant's mother, was working at her place of employment. Jennifer Collins had been watching the children that day until appellant arrived around noon.

Ross called home at about 2:20 p.m., requesting that appellant pick her up at school. He replied that he did not want to put all the children in the car and come get her, so he remained at the residence. After riding the bus home, Ross entered the house and noticed "[E__] was coming around me more." Detecting "an odor", Ross inspected E__ M__ P__ and noticed "white stuff" on E__ M__ P__'s vagina which Ross believed to be "sperm." She questioned the child and confronted appellant, who denied he had harmed the child.

Shortly thereafter, Trakeith McIntosh, E__ M__ P__'s twelve-year-old cousin, came home and observed the discussion taking place regarding E__ M__ P__. According to McIntosh, he asked the child "where he was messing with her at." She then took McIntosh by the hand into the bathroom, laid down on the floor, "opened her legs as wide as she could," and said appellant "had got on top of her and was moving real fast on her" until the phone started ringing. McIntosh testified E__ M__ P__ told him more about what happened to her than she told anyone else, including her mother Betty Collins. McIntosh's testimony indicated E__ M__ P__ was able to communicate the alleged events, unequivocally implicating appellant.

Ross then called Betty Collins at work. When she arrived home, Collins examined E__ M__ P__ and called the police. The child was then taken to the hospital for a sexual assault examination.

The following morning, a DHS worker, in an effort to determine whether the child had been sexually abused, interviewed the child on videotape. The tape, made part of the appellate record by a bill of exception, did not specifically implicate appellant. Indeed, it reveals that the child's answers to the interviewer's questions were generally non-responsive. At one point, E__ M__ P__ stated "her daddy" or "Charles" had touched her private parts. Appellant was neither the child's father nor was he ever referred to as "Charles" in the record before us.

■ Appellant's first two contentions of error are the trial court's refusal to admit the videotape into evidence when, at trial, defense counsel offered it, and it was denied, in this manner:

We would, at this time, request that the Court allow the State—excuse me, allow the Defendant to use this videotape, in that it does—for purposes of impeachment of the testimony of Willie Mae Ross and Trakeith McIntosh. In their descriptions of the oral communication skills and the articulation skills of the victim, [E__ M__ P__].

And also, as the State's—or as the Defendant's only way to confront, since this testimony is hearsay and has been admitted by the court as res gestae statements, and descriptions of statements made by the victim, [E__ M__ P__].

The Court has determined that the victim, [E__ M__ P__], will not be allowed to testify in that she does not meet the criteria for testimony. And that this is the Defendant's only manner and only means of confronting the testimony that has been allowed that purports to be testimony of the victim, [E__ M__ P__].

THE COURT: Your request is denied.

Obviously, appellant's offer, although not definitively stated, was for the purpose of impeaching the hearsay declarant by allowing the jury to compare E__ M__ P__'s non-responsive, and possibly contradictory, answers on the videotape with the hearsay testimony of the witnesses who related that E__ M__ P__ could, and straightforwardly did, implicate appellant. The offer was sufficient to direct attention to appellant's real complaint. Tex.R.App.P. 74(d). It is, namely, that the videotape was offered to impeach E__ M__ P__'s credibility —her ability to accurately relate the events upon which McIntosh and Ross purportedly based their testimony implicating appellant.

Certainly, had E__ M__ P__ personally testified and directly indicated that appellant was her assailant, the videotape would have been admissible as evidence of a prior inconsistent statement. Tex.R.Crim.Evid. 612(a); *Smith v. State*, 520 S.W.2d 383 (Tex.Cr.App.1975). E__ M__ P__ did not testify, but appellant was vicariously indicated by the admission of the hearsay testimony of her declarations, which the trial court explicitly permitted to be introduced as an excited utterance. Our rules of evidence provide that E__ M__ P__'s credibility could then be attacked "by any evidence ... which would be admissible if the declarant had testified." Tex.R.Crim.Evid. 806. Consequently, the jury should have been afforded the opportunity to view the videotape and assign to it their own value in judging the credibility of the witnesses. Then, we cannot conclude that in a prosecution for the aggravated sexual assault of a child, the exclusion of the videotape, which contains possibly exculpatory material, was harmless beyond a reasonable doubt. Tex. R.App.P. 81(b)(2). Therefore appellant's first and second points of error are sustained.

■ Although the sustention of the points requires a reversal and remand, it is necessary that we resolve appellant's third- and fourth-point insufficient evidence contentions; for, if they are sustained, a retrial will be barred. *Hooker v. State*, 621 S.W.2d 597, 598 (Tex.Cr.App.1981). Specifically, appellant contends that the evidence is insufficient to support the allegations in the indictment that he caused his penis to contact the sexual organ of E__ M__ P__, or that he caused the penetration of the anus of E__ M__ P__ by means unknown. To resolve the contentions, we must review all of the evidence introduced in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Cr.App.1986).

In addition to the testimony of Trakeith McIntosh and Willie Mae Ross referred to above, a nurse who worked as a sexual assault examiner testified regarding her findings upon examining E__ M__ P__ at approximately 9:00 p.m. on January 21, 1987. The nurse, Jamie Farrell, stated E__ M__ P__ had a half-centimeter abrasion in her periurethral area and three rectal tears; these injuries were "consistent with a male penis being shoved against both those areas." Farrell testified E__ M__ P__'s injuries were sustained at the same time. Both the abrasion and the rectal tears were "open and fresh." On cross-examination, nurse Farrell stated abrasions such as E__ M__ P__'s would remain open approximately six to eight hours after they were sustained. She stated positively that some object had penetrated E__ M__ P__'s rectum and that the penetration was from the outside.

Furthermore, an FBI serology analyst testified he performed examinations on E__ M__ P__'s clothing to determine if semen was present. The scientific tests showed an absence of blood group substances in the semen he found in the clothing. Such a finding supported a conclusion that the semen belonged to a male "non-secretor," a classification that the analyst testified comprised 20–30% of the male population, including appellant. Therefore, the serology analyst stated, he could not eliminate appellant as the source of the semen identified on the examined items.

From the evidence outlined above and in the discussion of appellant's first and second points of error, any rational trier of

fact could find the evidence sufficient to support appellant's conviction as alleged in the indictment. Since the evidence was sufficient to support appellant's conviction of aggravated sexual assault under either of the two methods by which he allegedly committed the offense, the general verdict returned by the jury was proper. *Bailey v. State*, 532 S.W.2d 316, 323 (Tex.Cr.App. 1976). Appellant's third and fourth points of error are overruled.

Because we reverse and remand, it is unnecessary to decide appellant's fifth point of error, in which he contends the hearsay testimony of Trakeith McIntosh was inadmissible because it did not satisfy the excited utterance exception to the hearsay rule. The sustention of the point would not change the disposition made. Tex.R.App.P. 90(a).

Neither do we decide appellant's sixth- and seventh-point contentions that articles 28.10 and 28.11 of the Code of Criminal Procedure are unconstitutional, because those decisions are not absolutely necessary to the disposition of the appeal. *Turner v. State*, 754 S.W.2d 668, 675 (Tex. Cr.App.1988); *Coberly v. State*, 644 S.W.2d 734, 735 (Tex.Cr.App.1983).

The judgment is reversed and the cause is remanded to the trial court.