Craig Jonathan WILLOVER,
Appellant,

v.

The STATE of Texas, Appellee.

No. 01–98–01066–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 30, 2000.

Opinion Dissenting from Denial of
En Banc Review Dec. 7, 2000.

Opinions Dissenting from Denial of
En Banc Rehearing Feb. 13, 2001.

Opinion Dissenting from Denial of
En Banc Consideration Feb. 13, 2001.

Tony Aninao, Houston, for appellant.

Sherry L. Robinson, Chad E. Bridges, Hempstead, for state.

Panel consists of Justices COHEN, WILSON, and PRICE.*

## OPINION

COHEN, Justice.

A jury found appellant guilty of aggravated sexual assault and assessed punishment at life in prison. We reverse and remand.

---

\* The Honorable Frank Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Rule 612(a) of the repealed rules of criminal evidence has been reenacted without change

## EXCLUSION OF THE COMPLAINANT'S VIDEOTAPED INTERVIEW

In point of error one, appellant contends the trial court erred by refusing to show the jury two videotapes of the complainant's interview by a child abuse specialist.

The State contends appellant waived the error because he never offered the tapes during or after the complainant's testimony. We disagree. Appellant offered the tapes both before and after the complainant's testimony. Both times the State objected, and both times the judge ruled them inadmissible.

In one interview, the complainant never accused appellant of abuse. She accused someone else. In the other, she accused appellant. At trial, appellant sought to admit both tapes. The complainant, whom the interviewer said was "developmentally challenged," had difficulty answering questions coherently and stating the difference between the truth and a lie.

Two Texas courts have held it was reversible error to exclude such evidence. *See Patmore v. State,* 831 S.W.2d 97, 99 (Tex.App.—Eastland 1992, no pet.); *Hall v. State,* 764 S.W.2d 19, 21 (Tex.App.—Amarillo 1988, no pet.). Our highest criminal law court has declared, "The rule of admissibility of evidence of this nature should be liberal...." *Smith v. State,* 520 S.W.2d 383, 386 (Tex.Crim.App.1975). The purpose is to admit "... any evidence which gives promise of exposing falsehood." *Id.* The *Hall* opinion is emphatic: "Certainly, had [the complainant] personally testified and directly indicated that appellant was her assailant, the videotape would have been admissible as evidence of a prior inconsistent statement. TEX. R.CRIM.EVID. 612(a)[1]...." 764 S.W.2d at

as rule 613(a) of the merged Texas Rules of Evidence. Thus, *Hall* is authority for admission under the present rule 613(a).

21. That happened here. These opinions are unanimous and well reasoned.

█ The trial judge sustained the State's objection, which was based on Tex. Code Crim.P.Ann. art. 38.071 (Vernon Supp.2000). The judge concluded the videotapes were inadmissible because they were made after the complaint was filed. *See id.* at §§ 2(a), 5(a). Those sections make such recordings admissible when, among other things, they were made before the complaint was filed. This ruling was error, however, because article 38.071 does not apply to this case. "This article applies only . . . if the trial court finds that the child is unavailable to testify at the trial of the offense. . . ." Tex.Code Crim. P.Ann. art. 38.071, § 1 (Vernon Supp. 2000); *Matz v. State*, 989 S.W.2d 419, 423 (Tex.App.—Fort Worth 1999), *rev'd on other grounds*, 14 S.W.3d 746 (Tex.Crim. App.2000). The trial court never found that, and the complainant testified at trial.

On appeal, the State does not contend its trial objection based on article 38.071 had merit. It does not mention article 38.071 at all. Instead, the State now contends for the first time that the videotapes were inadmissible because appellant never met the rule 613(a) predicate for admission of a witness's prior inconsistent statement. *See* Tex.R.Evid. 613(a).[2] At trial, the State never mentioned rule 613(a). It would be unfair to allow the State now to penalize appellant for not complying with rule 613 when the State never objected on that basis in the trial court. If it had, appellant would have been on notice of the claimed defect and could have cured it. That is why we require objections. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App. 1977).

█ Requiring a timely and specific objection is not a mere "technicality." Rather, it is one of the most important things that makes a fair trial fair. It is required by statute. Tex.R.Evid. 103(a). The rule has exceptions, but they are few and far between. *See* Tex.R.Evid. 103(d) (entitled "Fundamental Error in Criminal Cases"). In almost every appellate case, the State invokes the requirement against the defendant, the opposite of the parties' posture here, and we enforce it vigorously. The policy applies to the State, as well as to defendants. *Sedani v. State*, 848 S.W.2d 314, 320–21 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (op. on reh'g); *see Robinson v. State*, 548 S.W.2d 63, 66 (Tex.Crim. App.1977) ("A good rule of evidence works both ways."). We hold that to allow the State to exclude a defendant's evidence for secret reasons, unheard of in the trial court and revealed only belatedly on appeal when it is too late for the defendant to respond, would be a denial of due process of law. *Id.; see State v. Gonzales*, 850 S.W.2d 672, 675 (Tex.App.—San Antonio 1993, pet. ref'd) (in a state's appeal, applying the rule against a criminal defendant, stating, "It would be inappropriate for a reviewing court to determine that the suppression of the evidence is supported on other grounds when the trial court did not address any other possible grounds for the suppression.").

█ But even if we were to allow the State to raise its new objection under rule 613(a) now, after the trial has ended and after appellant has lost his right to respond, the State would not prevail. Rule 613(a) does not apply to this case because its last sentence provides, "This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2)."[3] Rule 801(e)(2) provides:

**2.** The predicate requires that the witness (1) be told the contents, time, and place of the prior inconsistent statement and the person to whom it was made and (2) be given an opportunity to explain or deny the statement. Tex. R.Evid. 613(a).

**3.** We disagree strongly with the dissenting opinion's statement that, by relying on rule 801(e)(2), we have raised a new theory. It is the State, not this Court, that has raised rule 613(a) as a ground for affirmance on appeal for the first time, after the trial and after appellant filed his appellate brief. Part of

(e) A statement is not hearsay if:

(1) ...

(2) *Admission by Party—Opponent.* The statement is offered against a party and is:

    (A) The party's own statement in either an individual or representative capacity;

    (B) a statement of which the party has manifested an adoption or belief in its truth;

    (C) a statement by a person authorized by the party to make a statement concerning the subject;

    (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship; or

    (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

TEX.R.EVID. 801(e)(2). Thus, appellant did not have to meet the requirements of rule 613(a) because he was offering the admission of the complaining witness herself, *i.e.,* an admission attributable to the party-opponent. The Austin Court of Appeals so held in *Cuyler v. State,* 841 S.W.2d 933, 935 (Tex.App.—Austin 1992, no pet.). We agree with *Cuyler.*

We realize that the Austin Court has overruled its holding in *Cuyler. See Halstead v. State,* 891 S.W.2d 11, 12 n. 1 (Tex.App.—Austin 1994, no pet.). The *Halstead* court held that, in a criminal case, the State, not the complainant, is the "party-opponent," and, therefore, the language in rule 613(a) favoring admission of testimony by "a party-opponent as defined in Rule 801(e)(2)" did not apply to a complainant's statement. We respectfully disagree with *Halstead.*

Rule 613(a)'s last sentence attempts to guarantee that the inconsistent testimony of those seeking and resisting judgments is heard. Other rules strive for the same result—that crucial evidence be admitted. As a general rule, "All relevant evidence is admissible...." TEX.R.EVID. 402. What could be more relevant than the complainant's contemporaneous videotaped statement to a sex-abuse counselor implicating someone other than appellant? "These rules shall be construed to secure fairness in administration ... of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." TEX.R.EVID. 102. What could be more important "to secure fairness" than to admit the complainant's videotaped statement implicating someone other than appellant? What evidence could be more likely to achieve "the end that the truth may be ascertained" and to see "proceedings justly determined"?

■ We consider it significant that, even before our highest courts merged the rules of evidence, rule 613(a)'s predecessor governing only criminal cases contained the same language. TEX.R.CRIM.EVID. 612(a), 701–02 S.W.2d (Tex.Cases) XLIX (1985, superseded 1998). That fact and the rule's language show that the "party-opponent" admissions mentioned in the rule cannot be only those of "the State" and never those of the complainant. It must include statements of individuals aligned with the State in the ways outlined in rule 801(e)(2). *See* TEX.R.EVID. 801(e)(2)(B)-(D) (party-opponent admission includes statements (1) in which party has manifested adoption or belief in truth, (2) by one authorized by party to make statements on that subject, and (3) by party's agent or servant concerning matter within scope of agency or employment); *see also Rodela v. State,* 829 S.W.2d 845, 849 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (holding police investigator was State's "agent" under former Texas Rule of Criminal Evidence 801(e)(2)(D)); *United States v. Branham,* 97 F.3d 835, 850–51 (6th Cir.

rule 613(a) is its reference to rule 801(e)(2), which nullifies rule 613(a) in part. The State cannot both raise a new theory on appeal and

also expect a court of law to apply only part of the rule—that which favors the State— while ignoring the rest.

1996) (holding statements of government's paid informant admissible against government under Federal Rule of Evidence 801(d)(2)(D) because made within scope of agency). We believe statements by the complaining witness, like those by a police officer or state employee, can fall within rule 801(e)(2)'s definition in a criminal trial. *Cf.* David W. Louisell & Christopher B. Mueller, 4 *Federal Evidence* § 426, 322–25 & n. 9 (suggesting terms agent and servant under FRE 801(d)(2)(D) in at least civil cases "should reach every person whose physical conduct can legally be, and is contended in the particular case to be, the basis of a claim or defense against the party against whom the statement is offered ...," in addition to actual agents and servants). "The rule should be broadly construed to reach such statements." *Id.* "In a practical sense a prosecuting witness certainly occupies party opponent status." *Goodson v. State,* 566 So.2d 1142, 1148 n. 11 (Miss.1990). "While the State is technically the 'party' in a criminal case, the complainant in a criminal case is analogous to a party. Since the hearsay evidence proffered by [the defendant] was the out-of-court statement of the complainant, such testimony is quite similar to hearsay evidence which is currently admissible under [the Tennessee version of Texas Rule of Evidence 801(e)(2) ]." *State v. Brown,* 29 S.W.3d 427, 434(Tenn. Jan. 24, 2000) (designated for publication), *cert. denied,* —— U.S. ——, 121 S.Ct. 275, 148 L.Ed.2d 200 (2000).

If rule 613(a) means only the inanimate State, its language is almost meaningless. For example, the rule begins, "In examining **a witness** concerning a prior inconsistent statement **made by the witness** ...." It will be difficult to cross-examine the inanimate State of Texas about its prior inconsistent statement. The rule continues: "... **the witness** must be told the contents of such statement and the time and place and the person to whom it was made...." It will be difficult to tell that to the State of Texas. If nobody but the "State of Texas" can make party-opponent admissions, then rule 613(a)'s protection is largely imaginary in criminal cases.

Excluding these videotapes would be a puzzling result also because that same evidence would unquestionably be admitted if this case were civil, *i.e.,* if the complainant sued appellant for damages. "Except as otherwise provided by statute, these rules govern **civil and criminal** proceedings ... in all courts of Texas...." Tex.R.Evid. 101(b) (emphasis added). Now that our highest courts have merged our formerly separate rules and applied the identical rule 613 to both civil and criminal proceedings, how can we interpret that single rule to exclude in a criminal case the same evidence that would obviously be admissible in a civil suit on the same facts between the same people?

Rule 613(a) is about "witnesses." It mentions them six times. It is found in article VI, which is entitled "Witnesses." Rule 613's title is "Prior Statements of Witnesses...." Rule 613(a)'s title is "Examining Witness Concerning Prior Inconsistent Statement." Thus, rule 613(a) is not about the State of Texas, which is, in this context, merely a nominal party.[4]

■ We therefore hold that when the rule uses the term "admission by party-opponent," it includes those of the defendant and the complaining witness. To say that it means only those of the State of Texas is contrary to (1) the purpose of the rule; (2) the language of the rule; and (3) the other rules, particularly rule 102 (requiring that the rules be construed "to secure fairness" and "to the end that the truth may be ascertained").

We have already stated our disagreement with *Halstead.* Two other cases have reached the same conclusion as *Hal-*

---

4. "Nominal" means "titular; existing in name only; not real or substantial...." Black's Law Dictionary (5th ed.1979). This aptly describes the State's status as a "party-opponent."

*stead.* *See Ramirez v. State*, 987 S.W.2d 938, 943 n. 2 (Tex.App.—Austin 1999, no pet.); *Owens v. State*, 916 S.W.2d 713, 717–18 (Tex.App.—Waco 1996, no pet.). Both cases, like *Halstead,* simply say that under rule 613(a), the State is the "party-opponent" and conclude without any further discussion or analysis.[5] *Owens* and *Halstead* also cite a treatise for the proposition, but it offers no more analysis. These authorities state the one-sentence conclusion, as if it were self-evident. We believe the opposite is evident and that the contrary holdings nullify the rule.

In addition, *Ramirez* and *Owens* are distinguishable. In both cases, the State was not using the evidence to impeach a defense witness, as rule 613 contemplates,[6] but to make its own prima facie case. In both cases, complaining witnesses changed their stories, and the State then offered their prior statements into evidence. *Ramirez,* 987 S.W.2d at 940–43; *Owens,* 916 S.W.2d at 715–17. These statements were obviously not admissions of the State's "party-opponent." The **complainants** in *Ramirez* and *Owens* were not, and never could be, the State's "party-opponent." The State's party-opponent in *Ramirez,* in *Owens,* and in every case is the defendant. Because the complaining witnesses in those cases were not the State's party-

opponent, the State was not entitled to any benefit from rule 613(a)'s last sentence.[7]

We decline to follow *Halstead, Ramirez,* and *Owens.* We rely on *Cuyler,* as well as *Patmore,* 831 S.W.2d at 99, *Hall,* 764 S.W.2d at 21, *Smith,* 520 S.W.2d at 386, and most importantly, rule 613(a) itself.

### HARM

■ The State contends the ruling was harmless because Lisa Holcombe, the interviewer, testified the complainant had said in one tape that only her brother had touched her improperly and never implicated appellant. The State refers to the following testimony:

Prosecutor: Did you ask [the complainant] if someone had touched her in a way that bothered her?

Holcombe: Yes.

Prosecutor: What was [the complainant's] response?

Holcombe: The only indication of anybody touching her was her brother at that time.

. . .

Prosecutor: Did you ask her if someone had ever put her mouth on their body?

Holcombe: Yes.

---

5. The dissent's out-of-state cases are as light on reasoning as *Halstead, Ramirez,* and *Owens.* Some devote one sentence to the issue. *See Ohio v. Dinwiddie,* Summit Appeal 12876 at *3 (Ohio Ct.App. Sept. 16, 1987) (not designated for publication) ("The victim is not a party opponent."); *In re Davis,* 166 Mich.App. 735, 420 N.W.2d 872, 873 (1988) (dicta). Others use two, but say no more. *See State v. Browning,* Clermont Appeal 04–022 at *2 (Ohio Ct.App. Dec. 19, 1994) (not designated for publication); *People v. Deskin,* 60 Ill. App.3d 476, 17 Ill.Dec. 757, 376 N.E.2d 1086, 1090 (1978). The most disappointing is *Goodson v. State,* which recognizes that, "In a practical sense a prosecuting witness certainly occupies party opponent status," yet overrules the point in three sentences. 566 So.2d 1142, 1148 n. 11 (Miss.1990). All these cases mistakenly assume that only statements by the two parties, the defendant and "the State" (which is inanimate and can never make

statements on its own), can be admissions by a party-opponent. To the contrary, the rule in those states and in ours also allows statements by those closely associated with the parties to "count" as statements by the parties themselves. *See, e.g.,* TEX.R.EVID. 801(e)(2)(B)-(D) (in addition to a party's own statements, party-opponent admissions include those by the party's co-conspirator, by its agent or servant, by someone the party authorizes to make the statement, and another's statement the party adopts). That is the law in Texas. *See Rodela v. State,* 829 S.W.2d 845, 849 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (State's investigator's statements held to be those of party-opponent).

6. Rule 613 is entitled: "Prior Statements of Witnesses: Impeachment and Support."

7. "[Rule 613(a) ] does not apply to admissions of a party-opponent...." TEX.R.EVID. 613(a).

Prosecutor: And what was her response?

Holcombe: No.

Prosecutor: Did you ever ask if she had been asked to put her mouth on someone's body?

Holcombe: Yes.

Prosecutor: And her response?

Holcombe: No.

. . .

Prosecutor: Did she say that [her brother] and her dad had the same private part?

Holcombe: Yes.

Prosecutor: Did you ask her—generally did you inquire as to whether or not someone had touched her vagina?

Holcombe: Yes.

Prosecutor: And what was her response?

Holcombe: No.

Prosecutor: And did you ask her if somebody touched her behind?

Holcombe: I asked her if someone had touched her and she said that [the brother] was the only person that had touched her.

. . .

Prosecutor: April 4th. By use of the dolls did she indicate that her father had abused her vaginal area?

Holcombe: No.

Prosecutor: Did she indicate that her father had abused her rectal area?

Holcombe: No.

. . .

Prosecutor: What was the difference in the response?

Holcombe: [The complainant] had made reference to getting touched with a stick on her private part.

Prosecutor: But where did she say that the stick was found?

Holcombe: She said it was found from the yard.

Prosecutor: And she said that she had her clothes on at that time when she was touched by the stick?

Holcombe: She said she had her clothes on.

Prosecutor: And other than the reference to that account, there was no reference of sexual abuse in that interview based on your recollection?

Holcombe: As far as the only other reference that she had made was when I asked—was referring to the dolls and if a private part had ever touched her and she said [the brother] and Craig.

Prosecutor: Okay, but what was in conjunction with the stick?

Holcombe: And when I asked her what with after that she said it was a stick.

. . .

We decline to hold that this testimony by Holcombe rendered the error harmless. We have viewed the tapes, and in our opinion, Holcombe's testimony about the complainant is no substitute for the tapes themselves. Holcombe's testimony is not comparable to the tapes in quality or quantity. By requesting admission of all the tapes, including those that incriminated him, appellant was apparently trying to show the jury a picture of the complainant as a malleable witness, subject to pressure and influence, and thus not credible. The tapes are first-hand, verbatim, pictured statements of the complainant made long before the trial, much closer to the date of the relevant events. Despite lengthy questioning by Holcombe, an interviewer specially trained to elicit sex-abuse allegations from children, the tapes show that the complainant was at first unwilling to accuse appellant, but willing to accuse someone else. Comparing the tapes to Holcomb's testimony, we conclude that their exclusion may have deprived appellant of the most valuable evidence he had. The State's case consisted largely of admissible hearsay and circumstantial evi-

dence.[8] The State presented its case without calling the complainant to testify, and then it resisted appellant's attempts to show the complainant as she was when interviewed by the State's agents, preferring to rely instead on the eyes and ears of others. It is difficult for us to imagine a fair trial of this case without this evidence.

The opinion dissenting from denial of en-banc review lists the evidence against appellant and concludes it was so overwhelming that it makes the error harmless. Again, we disagree. The complainant's testimony was conflicting, first exculpatory, then inculpatory. To the extent the medical evidence proved she suffered injury, none of it proved appellant was the offender. The other fact witnesses were people who repeated in court selected words of the complainant. That is why it was so important for the jury to see the complainant's actual demeanor and words nearer the time of the event. The dissent contends that second-hand, selected renditions of the complainant's accounts were so overwhelming that *real* evidence was unnecessary to the defendant's case. A jury that found hearsay so persuasive surely might have been influenced by the contemporaneous statements of the complainant herself.

Based on this record, we conclude that appellant's substantial rights were affected. Tex.R.App.P. 44.2(b); *see Hall,* 764 S.W.2d at 21 ("Consequently, the jury should have been afforded the opportunity to view the videotape and assign to it their own value in judging the credibility of the witnesses.").

We hold that (1) article 38.071 does not apply to this case, (2) rule 613(a) does not apply to this case, (3) pursuant to rule 801(e)(2), the videotapes are not hearsay, and (4) their exclusion was harmful. Point of error one is sustained.

The judgment is reversed, and the cause is remanded.

En-banc consideration was requested.

A majority of the Justices of the Court voted to deny en-banc consideration.

Justice TAFT's dissenting opinion from the denial of en-banc review to follow.

**TAFT, Justice, dissenting from the denial of en banc review.**

This case is about the trial court's decision to allow one, rather than another form, of extrinsic evidence to impeach T.W., the complainant, with prior inconsistent statements. The true issue is whether the trial court erred in excluding the entirety of two videotapes to impeach T.W. with two prior inconsistent statements. The trial court did allow extrinsic evidence of the same prior inconsistent statements through the testimony of the interviewer to whom they were made. Appellant insisted on introducing the tapes in their entirety in the absence of editing equipment that would have allowed introduction of only the prior inconsistent statements themselves.

Instead of illuminating the true nature of this case, the panel opinion: (1) claims that the State is changing positions on appeal; (2) injects a new and highly ques-

---

8. Dr. Chacko, the State's medical expert, found no physical evidence of abuse of the complainant's vaginal area. She found physical evidence "consistent" with abuse of the anal area. She testified that abuse was not the only possible explanation for the anal injury and that four other physical conditions that would have been consistent with abuse of that area were not present. At trial, the complainant first testified that nobody had touched her "anywhere that's bothered" her; then, on cross-examination by the State, that appellant had anally abused her; finally, on redirect examination, that she had told Holcombe that appellant had vaginally and anally abused her. In the excluded videotapes, she first implicated only her brother, and then in the second one, she accused appellant. Remaining evidence showed the complainant's outcry and various conduct that experts said was consistent with abuse. This evidence made it more necessary, not less, that the tapes be admitted. We do not find this evidence so overwhelming as to suggest that any jury hearing it would not have given significant weight to the videotapes.

tionable theory of admissibility of the videotapes for the first time on appeal; and (3) barely mentions the other evidence of appellant's guilt either in an introductory fact statement or when conducting a harmless error analysis. For the reasons set out below, I respectfully submit that extraordinary circumstances required en banc consideration of this case. *See* TEX. R.APP. P. 41.2(c) ("En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decision or unless extraordinary circumstances require en banc consideration.").

## Facts

T.W. was a developmentally challenged eight-year-old girl. One day she pulled her pants down in the classroom and exposed herself. On another occasion, she told the principal that she slept up high and that her father would get on her back or on top of her. The principal referred T.W. to a professional counselor under contract with the school.

The counselor had about 5,000 hours of experience with Children's Protective Services dealing with sexually abused children. Because T.W. was not very verbal, the counselor had the child draw pictures. He asked T.W. if she remembered telling the school principal about someone hurting her. T.W. nodded and showed how she was hurt by pointing to her lower body area. The counselor drew the outline of a human body and asked the complainant to point to the area where she was hurt, and she pointed in the drawing to the area of her vagina. When asked who had hurt her, T.W. said "Daddy" (appellant). T.W. said her daddy put his "saw" or "salt" in me and that it hurt and was itchy. When asked to draw a picture of what "saw" or "salt" looks like, T.W. drew an object about 10 inches long by two inches, and said that "white, sticky stuff" comes out of it. Using two dolls, T.W. demonstrated by placing one doll on top of the other and using a thrusting motion by the doll repre-

senting her daddy. The counselor formed the opinion that T.W. had been sexually abused.

Andrea Hardeman was employed as an investigative caseworker with the Texas Department of Protective and Regulatory Services. She received a referral regarding T.W., and went to the family home on February 14, 1997. Mrs. Willover answered the door, but informed Hardeman that she could not come inside because they had dogs which would bite. Hardeman testified that she was unable to obtain enough information at that point, but left her card with instructions that Mr. Willover was to call her. Appellant called on February 19th, but failed to show up for the scheduled appointment after calling back to cancel it.

Kimberly White was employed as lead investigator with the Waller County Childrens' Protective Services. White related that T.W. was removed from her home due to an outcry of sexual abuse allegedly committed by the father. White testified that the complainant and her brother have been placed in a therapeutic foster home, where their behavior and demeanor have improved in comparison to the way they were prior to the placement.

Lisa Holcombe is a counselor who interviewed T.W. at the Children's Assessment Center on April 3, 1997, and June 6, 1997. During the first interview, T.W. said that only her brother, and no one else, had touched her private parts. During the second interview, T.W. told Holcombe that appellant touched her private part with a stick. Holcombe was unable to conclude from the two interviews that appellant had sexually abused T.W.

Dr. Mariam Chacko was employed as an attending physician at the Child Protective Health Clinic at Texas Childrens' Hospital. She examined T.W. on April 17, 1997 when she was eight years old. Examination of the external portion of the vulva and the vaginal opening showed no abnormalities. Examination of the anal area revealed a

scar. Dr. Chacko asked T.W. if her father had touched her anal area with his privates, and she nodded yes and said it occurred in the bathroom. Dr. Chacko's opinion is that the condition of T.W.'s anal area was consistent with trauma from sexual abuse. Dr. Chacko testified that there was no way to tell the age of the scarring, but that it would be consistent with sexual abuse occurring around February of 1997.

Vickie Smith was employed as a therapist for a therapeutic foster care agency called the Arrow Project. She had been T.W's therapist for the past year. Smith was familiar with the characteristics exhibited by children who have been sexually abused, and she has observed T.W. exhibit the same characteristics.

Appellant called T.W. to testify. T.W. testified on direct that appellant did not touch her private parts. On cross-examination, she testified that appellant put his "P" in her "P" and in her "butt." On redirect, appellant's counsel brought Lisa Holcombe in the courtroom, and asked T.W. to remember talking to Holcombe the year before. T.W. agreed with appellant's counsel that she had told Holcombe that appellant had put his "P" in her "P" and behind four times.

### Admissibility of Videotapes

In his first point of error, appellant contends the trial court erred in excluding the two videotapes of Lisa Holcombe's interview with T.W. Appellant argues that he should have been allowed to impeach T.W.'s courtroom testimony with these tapes.[1] The panel opinion treats appellant's point of error as if the State urged the trial court to exclude the tapes, and as if the tapes constituted the only extrinsic evidence available to impeach T.W. with

her prior inconsistent statements. This is not an accurate rendition of what happened in this trial.

First of all, the State never opposed admission of the tapes because they contained prior inconsistent statements. This explains what the panel opinion observes as the State's failure to take issue with *Patmore v. State*, 831 S.W.2d 97 (Tex. App.—Eastland 1992, no pet.) and *Hall v. State*, 764 S.W.2d 19 (Tex.App.—Amarillo 1988, no pet.).[2] The trial court, like the State, did not oppose appellant's introducing the complainant's prior inconsistent statements in the videotapes. What the trial court would not allow, at no urging from the State, was the admission of the tapes in their entirety. In the absence of editing equipment, by which only the prior inconsistent statements could be shown to the jury, the trial court required appellant to use Lisa Holcombe's testimony. A closer look at the record shows other variances between the panel opinion and the actual sequence of events.

### A. Initial Objections

After the State rested, appellant sought to introduce the two videotapes containing both interviews of T.W. by Lisa Holcombe. The State objected on the grounds: (1) the tapes' introduction would violate the requirement of article 38.071 of the Code of Criminal Procedure that the tapes have been made before charges were filed or an indictment handed down; and (2) the State was not provided with 14 days' notice, as required by article 38.072 of the Code of Criminal Procedure. The trial court rejected the State's second argument, but sustained the State's objection that the videotapes were made after the complaint

---

1. Appellant did not contend the tapes were admissible in their own right as admissions by party-opponent, either at trial or on appeal.

2. Of course, *Patmore* and *Hall* are distinguishable because in both cases the trial court excluded the tapes, which contained the complainants' prior inconsistent statements, *without allowing any other extrinsic evidence* of the prior inconsistent statements. *See Patmore*, 831 S.W.2d at 98; *Hall*, 764 S.W.2d at 21. Here, the trial court allowed the same prior inconsistent statements to be presented via the testimony of the person to whom the statements were made.

was filed or the indictment handed down. *See* TEX.CODE CRIM. P. ANN. art. 38.071, §§ 2(a), 5(a) (Vernon Supp.2000). At this point, appellant's counsel asked if the tapes might be used for impeaching T.W., if T.W. were to testify inconsistently; the trial court responded that "impeachment is a whole different ball game." The trial court, however, declined to rule prospectively on other uses of the tapes.

### B. No Objection Based on T.W.'s Unavailability

For the first time on appeal, the panel opinion raises the concept that article 38.071 applies only if the court finds the complainant is unavailable to testify at trial. *See* TEX.CODE CRIM. P. ANN. art. 38.071, § 1 (Vernon Supp.2000). The panel opinion assumes the State has abandoned its article 38.071 theory because T.W. testified, and thus asserts that the State is raising a new theory on appeal, namely that appellant did not meet the predicate for introducing a prior inconsistent statement. The change from article 38.071 to impeachment as a basis for admissibility, however, was made by appellant at trial, as explained above. Article 38.071 had become moot, not because T.W. became available but, because the videotapes were made after charges were filed.

### C. Preservation of Appellant's Impeachment Offer

The State argues on appeal that appellant's counsel neither requested nor obtained a ruling on the videotape's admission as a prior inconsistent statement, so that he has not preserved error. *See* TEX. R.APP. P. 33.1(a). As noted above, when appellant's counsel first mentioned the impeachment basis, the trial court declined to rule prospectively. Appellant's counsel sought to introduce the tapes into evidence again after T.W. testified, during the testi-

mony of Lisa Holcombe. The trial court reiterated that the tapes were inadmissible because the first tape was made after the complaint had been filed, and the second tape had been made after indictment.

Appellant's counsel argued the tapes had impeachment value, to which the court responded that there was no editing equipment, and that appellant's counsel could not show the tape in its entirety. *Most significantly, the court stated it had allowed appellant to use Lisa Holcombe's testimony as extrinsic evidence of T.W.'s prior inconsistent statements.* Appellant's counsel continued to press for admissibility of the entire tape because it impeached T.W.'s testimony. The trial court did not make any additional ruling, and appellant's counsel made no further attempts to introduce the tapes before resting.[3]

Under these circumstances, the record seems clear enough that appellant adequately pressed his offer of the entirety of the tapes until the trial court made it clear that it would not allow the entirety to be shown to the jury. Also, the panel opinion is correct that the State's raising, for the first time on appeal, appellant's failure to meet the predicate for a prior inconsistent statement is not timely. The issue is, thus, whether the trial court erred by continuing to refuse appellant's request to play the entire tape, after appellant had apparently accepted the court's offer to substitute playing the tapes with Lisa Holcombe's testimony of the same events. Unfortunately, the terms of the trial court's accommodation do not appear on the record, so we do not even know if appellant agreed to the substitution.

Nevertheless, the trial court's accommodation was not an abuse of discretion under the peculiar circumstances of this case. Indeed, it was appellant's responsibility, as the proponent of the evidence, to provide the proper editing equipment in order to

---

**3.** Contrary to the panel opinion, it was not the State which objected to introducing the tapes, when they were offered for impeachment; rather, the trial court refused to play the tapes in their entirety, where only a small portion of the tapes contained the inconsistent statements.

show the admissible portions of the tape. If the proper equipment was unavailable, it was appellant's responsibility to seek a continuance to obtain the proper equipment. Appellant did neither. Accordingly, I find it extraordinary that the panel opinion holds that the trial court committed error. If the trial court did err, however, it was only by requiring appellant to use Lisa Holcombe's testimony of the same statements by T.W. as a substitute for the videotapes.

## D. Admission by Party Opponent

The most extraordinary aspect of the panel opinion, however, is that, having accused the State of taking a new and different position on appeal, the panel opinion raises a theory of admissibility unmentioned by either party at trial or on appeal! The panel opinion holds T.W. is a party opponent to the defendant, thereby rendering rule 613(a) (impeachment with a prior inconsistent statement) inapplicable because statements made by a party opponent are not hearsay. *See* TEX.R. EVID. 613(a); *see* TEX.R. EVID. 801(e)(2). A statement qualifies as an admission by party opponent, however, if it is offered against a party and it is the party's own statement. *Hughes v. State,* 4 S.W.3d 1, 6 (Tex.Crim.App.1999) (citing TEX.R. EVID. 801(e)(2)). It is the State, and not the complainant, that is a party in a criminal proceeding. *Halstead v. State,* 891 S.W.2d 11, 12 & n. 1 (Tex.App.—Austin 1994, no pet.). This Court has never held that the complainant in a criminal case is a party opponent, but we have recognized that agents of the State are subject to the rule.

*See Rodela v. State,* 829 S.W.2d 845, 849 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).[4]

In support of its position, the panel opinion relies on an opinion by the Austin court of appeals that was overruled two years after it was published. *See Cuyler v. State,* 841 S.W.2d 933, 935 (Tex.App.—Austin 1992, no pet.), *overruled by Halstead,* 891 S.W.2d at 12 & n. 1. The *Cuyler* position has also been expressly rejected by the Waco court of appeals in *Owens v. State,* 916 S.W.2d 713, 717 (Tex.App.—Waco 1996, no pet.).[5]

Research of other jurisdictions indicates that they follow the rule of *Halstead,* limiting party opponents to agents of the State. *See, e.g., Goodson v. State,* 566 So.2d 1142, 1148 & n. 11 (Miss.1990); *State v. Antillon,* 229 Neb. 348, 426 N.W.2d 533, 538 (1988), *superseded by statute on other grounds as stated in State v. Andersen,* 232 Neb. 187, 440 N.W.2d 203 (1989); *Ex parte Dunaway,* 746 So.2d 1042, 1049 (Ala. 1999) (Lyons, J., concurring); *People v. Deskin,* 60 Ill.App.3d 476, 17 Ill.Dec. 757, 376 N.E.2d 1086, 1090 (1978); *In re Davis,* 166 Mich.App. 735, 420 N.W.2d 872, 873 (1988); *State v. Dinwiddie,* Summit Appeal 12876 at *3 (Ohio Ct.App. Sept. 16, 1987) (unpublished opinion); *State v. Browning,* Clermont Appeal 04–022 at *2 (Ohio Ct.App. Dec. 19, 1994) (unpublished opinion).[6] Maine, on the other hand, considers there to be no party opponent on the State's side. *See State v. Therriault,* 485 A.2d 986, 992 (Me.1984).

4. The panel opinion dwells on the fact that the State, as an impersonal entity, cannot make admissions. No one disputes, however, that there are persons who are subject to the rule allowing admissions by a party opponent where the party is the State. The dispute is whether complainants are included along with agents of the State.

5. The Fort Worth court of appeals seems to have espoused *Cuyler* where it treated a witness in a criminal case as party opponent under rule 801(e)(2). *See L.M.W. v. State,* 891 S.W.2d 754, 765 (Tex.App.—Fort Worth 1994, no pet.). This case is an aberration, though, because the defendant had sought to introduce evidence that the witness (her then husband) had offered to influence the criminal proceedings in defendant's favor if she agreed to certain concessions in their divorce proceedings (in which they were party opponents).

6. Unpublished cases have no controlling authority. *See* OHIO CT. R.R.O. 2(G).

No reported cases from other jurisdictions that seem to agree with *Cuyler* have been found. All decisions from other jurisdictions discovered so far, disagree with the panel opinion's holding that T.W.'s statement is non-hearsay because it is the statement made by a party opponent. Thus, even if this issue had been brought before us, it should be decided in accordance with the prevailing authority from Texas, as well as other jurisdictions.

Moreover, the prevailing rule is to uphold a trial court's decision regarding admissibility, if the decision is correct for any reason, including a reason not developed at trial. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). *The panel opinion's holding effectively turns the prevailing rule, 180 degrees around, to overturning a trial court's ruling on appeal if such ruling is incorrect for a reason not previously mentioned either at trial or on appeal.* I find this beyond extraordinary.

### E. Harm Analysis

A final extraordinary aspect is the panel opinion's conclusion that appellant was harmed by the exclusion of the videotapes. The excluded evidence is cumulative of other evidence allowed by the trial court. Indeed, the trial court deliberately made an accommodation to allow appellant to present T.W.'s prior inconsistent statements through cumulative evidence. The panel opinion holds that Holcombe's testimony was not an adequate substitute for the videotapes because the tapes are first-hand, verbatim, pictured statements of T.W. made long before trial at a time much closer to the events described so that they would have helped appellant show the jury a picture of T.W. as a malleable witness. The jury saw T.W.'s malleability in court, however, by her conduct as a witness agreeing with whatever the questioning attorney led her to say.

Holcombe's testimony accurately described the parts of the interviews relating to complainant's rendition of the events. Most importantly, it presented T.W.'s pri-

or inconsistent statements thereby fulfilling the intended purpose of impeaching T.W.'s testimony. Consequently, the exclusion of the tapes did not deprive appellant of presenting valuable evidence to the jury. The excluded evidence was cumulative, and its exclusion was, therefore, harmless error. *See Quinonez–Saa v. State*, 860 S.W.2d 704, 707 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

The panel opinion does not find the State's evidence of T.W.'s drawings and outcries to trained sexual abuse counselors, doctors, and educators to be particularly persuasive. The panel opinion postulates that a jury would have found T.W.'s videotaped statements more real and persuasive than the witness accounts of T.W.'s outcries. One reason given by the panel opinion is that T.W.'s videotaped statements were closer to the actual events. This reason does not withstand scrutiny, however, because T.W.'s outcries to the school principal and the school sexual abuse counselor were much nearer to the time of the offense, while T.W. was still coping with having to live in the same household with a father who had sexually abused her. T.W.'s videotaped statements were taken several months later (two months and four months, respectively), after T.W. had been removed from her home.

Contrary to the panel opinion, the record shows that the jury was made fully cognizant of T.W.'s malleability as a witness; the jury witnessed it firsthand. No substantial difference in impact resulted from the trial court substituting Holcombe's candid testimony of her interview with T.W. for the videotapes. Moreover, the most powerful evidence in this case came from the school's sexual abuse expert, who overcame T.W.'s verbal deficiencies by getting her to demonstrate and draw on paper what had been done to her.

T.W.'s drawings constituted real evidence at the time nearest to the offense, while T.W. was still under the same pres-

sure, as at the time of the offense, of living in the same household with appellant. One drawing portrayed T.W.'s body showing that her daddy put his "salt" in her "pee" and it hurt. A separate drawing attached to the same State's exhibit portrayed a 10–inch long by two-inch thick phallus with notes indicating T.W. said: "stuff comes out of it"; the stuff is "white"; "daddy puts this in me—itchy"; "daddy climbs ladder and on top of me" (T.W. slept on the top bunk); and "get in trouble if tell."

There was other evidence of outcry by T.W., to her school principal, and to the examining doctor who found physical evidence to corroborate T.W.'s outcry of anal penetration. There is simply no reason to believe that the State's evidence would have been weakened at all by T.W. having been impeached with her videotaped prior inconsistent statements rather than by Holcombe's testimony of the same prior inconsistent statements by T.W.

### Conclusion

Where the panel opinion's approaches to the error asserted in this case were not raised by the parties, introduce novel legal theories, and largely mask the central issues in this case, it is extraordinary, if not unprecedented. Accordingly, with a heavy heart, I most strenuously dissent to the denial of en banc review.

Chief Justice SCHNEIDER and Justice NUCHIA join Justice TAFT's opinion dissenting from denial of en banc review.

Chief Justice SCHNEIDER's separate opinion dissenting from the denial of en banc review to follow.

JENNINGS, Justice, dissenting from the denial of en banc rehearing.

The majority extends Texas Rule of Evidence 801(e)(2) "party" status from law enforcement officials, who are actually agents of the State, to crime victims, who are not. I respectfully dissent.

The main purpose in excluding hearsay evidence is its inherent unreliability in assisting the factfinder in ascertaining the truth. There are essentially four " 'hearsay dangers'—faulty perception, faulty memory, accidental miscommunication, and *insincerity*." Olin Guy Wellborn III & Cathleen C. Herasimchuk, *Article VIII: Hearsay*, 30 Hous.L.Rev. 897, 898 (1993 Texas Rules of Evidence Handbook) (emphasis added) (footnote omitted). We, therefore, exclude from evidence various statements not presented under controlled courtroom conditions.

An admission by a party opponent is not considered hearsay and is not excluded because "the *party* is 'estopped' from making the ironic claim that his own remarks are untrustworthy unless made under the ideal testimonial conditions." Wellborn & Herasimchuk, *Article VIII: Hearsay*, 30 Hous.L.Rev. 897, 899 (emphasis added); *see Godwin v. State*, 899 S.W.2d 387, 390 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd).

The majority believes the State is merely "technically" or "nominally" a party. At first glance, it might appear a complaining witness, like a plaintiff, would fit into this category of being a "party." However, unlike in civil matters, in which a plaintiff and her agents are clearly parties with control, a complaining witness, especially in a sexual assault case, is at the mercy of the criminal justice system.

Criminal cases are inherently different from civil cases. A party in a civil case has control over the case, but a complaining witness does not. A plaintiff can decide when and whom to hire as counsel and, with the advice of counsel who represents *her*, when and how to initiate her case or settle it. A plaintiff has the ability to give input and make decisions regarding the *development*, prosecution, and presentation of her case. A complaining witness, especially a child, simply does not have this control.

In fact, crime victims are so different that the Texas Legislature statutorily en-

acted certain "Crime victims' rights." TEX. CODE CRIM.PROC.ANN. art. 56.02 (Vernon Supp.2001). Acknowledging the very weak position of crime victims in our criminal justice system, these basic rights include adequate protection, return of the victim's property, and notice and information requirements. *Id.*

Criminal actions are brought "In the name and by authority of the State of Texas." TEX.CODE CRIM.PROC.ANN. arts. 21.02, 21.21 (Vernon 1989). This is no mere legal fiction nor technicality. The prosecutor makes the charging decision, not the crime victim. The prosecutor represents the State, not the crime victim. Criminal cases are brought only after investigation by peace officers, prosecutors, and, in felony cases, grand juries, whose roles are clearly defined by statute. TEX. CODE CRIM.PROC.ANN. arts. 2.01–2.26, 19.01–19.42, 20.01–20.22 (Vernon 1977 & Supp. 2001).

A crime victim is neither an agent nor servant of the State, but simply a complaining witness, who has absolutely no control over when and how the case is brought and developed by the State. Sexual assault and family violence victims are often, unfortunately, very reluctant to come forward and initiate an investigation against a spouse, partner, parent, or other relative. Often, these sexual assault and family violence victims must be compelled by the State to give testimony against a person upon whom they completely depend. How can we deem a person in such a pathetic position, who does not want to be there, a "party"?

A sexual assault or family violence victim is often forced by unsympathetic social workers and investigators into situations in which she must choose between her safety or livelihood and telling the truth. She may be in a situation in which she must choose in an instant to trust a social worker whom she just met, rather than the abusive spouse or parent upon whom she may absolutely depend. Here, it would be ironic to allow statements made by victims, under often untrustworthy conditions, to obfuscate the truth.

To hold all complaining witnesses are "parties" under Texas Rule of Evidence 801(e)(2) will open a pandora's box, weakening the controlled courtroom conditions that assist the fact finder in ascertaining the truth. The majority's ruling will not only allow alleged contradictory statements of a complaining witness, but also any relevant alleged statements she made. A complaining witness should be subject only to proper impeachment as are other witnesses. Without the wisely crafted protection of the proper predicate required by Texas Rule of Evidence 613(a), it is not hard to imagine clever criminal defendants finding *insincere* friends to say, "The victim told me . . . ."

Because the State, not the complaining witness, is in fact the party opponent of the accused and the complaining witness is not an agent of the State, out-of-court statements by the complaining witness should not be admissible against the State pursuant to Texas Rule of Evidence 801(e)(2). *Owens v. State,* 916 S.W.2d 713, 717–18 (Tex.App.—Waco 1996, no pet.); *Halstead v. State,* 891 S.W.2d 11, 12–13 n. 1 (Tex.App.—Austin 1994, no pet.); *see* 2A STEVEN GOODE ET AL., TEXAS PRACTICE: COURTROOM HANDBOOK ON TEXAS EVIDENCE 444 (2000).

The majority ruling will have the exact opposite effect in the courtroom of what we all desire; it will cloud the truth, not illuminate it. By holding all complaining witnesses are "parties" and eliminating the requirements of Texas Rule of Evidence 613(a), complaining witnesses may be subjected to unfounded hearsay statements and allegations, now deemed by this Court to be "admissions." Therefore, rehearing en banc is necessary for this serious decision, and I respectfully dissent and further join Chief Justice Schneider in his dissent and Justice Taft in his two dissents.

Justice TAFT dissented from denial of en banc consideration.

Chief Justice SCHNEIDER and Justice NUCHIA joined Justice TAFT'S opinion dissenting from the denial of en banc consideration.

Chief Justice SCHNEIDER dissented from the denial of en banc consideration.

Justices TAFT and NUCHIA joined Chief Justice SCHNEIDER'S opinion dissenting from the denial of en banc consideration.

The State moved for en banc rehearing.

A majority of the Justices of the Court did not vote to grant en banc rehearing. *See* TEX.R.APP. P. 49.7; *Ex parte Wilson,* 25 S.W.3d 932, 932–33 (Tex.App.—Houston [1st Dist.] 2000, pet. filed).

Justice TAFT, dissenting from the denial of en banc rehearing.

Chief Justice SCHNEIDER and Justices NUCHIA, BRISTER, and JENNINGS join Justice TAFT'S opinion dissenting from the denial of en banc rehearing. Justice BRISTER would also have joined all but Part C of Justice TAFT'S earlier opinion dissenting from the denial of en banc consideration. Justice JENNINGS would also have joined Chief Justice SCHNEIDER'S and Justice TAFT's earlier opinions dissenting from the denial of en banc consideration.

Justice JENNINGS, dissenting from the denial of en banc rehearing.

Chief Justice SCHNEIDER and Justices TAFT, NUCHIA, and BRISTER join Justice JENNINGS'S opinion dissenting from the denial of en banc rehearing.

TAFT, Justice, dissenting from the denial of en banc rehearing.

A majority of the elected Justices on this Court have voted to sit en banc to review this case on motion for rehearing. By following our decision in *Ex parte Wilson,* 25 S.W.3d 932 (Tex.App.—Houston [1st Dist.] 2000, pet. filed) (per curiam),[1] a minority of the elected Justices, plus one visiting judge who was a member of the original panel deciding this case, are able to frustrate the will of the majority of elected Justices. This is because a five-to-five tie does not obtain the necessary majority of the en banc court to require en banc review. *Id.* at 932–33; *see also Fidelity & Guar. Ins. Underwriters. v. Saenz,* 878 S.W.2d 605, 605–07 (Tex.App.—Corpus Christi 1993, no writ) (in which three-to-three tie precluded en banc review).

I submit this is wrong for at least four reasons: (1) the rule makers were not given authority to make rule changes that affect the substantive rights of the litigants; (2) the rule change that has produced this anomaly conflicts with an existing statute; (3) the rule change that has produced this anomaly conflicts with the federal rule after which the Texas rule was modeled; and (4) the rule change that has produced this anomaly dilutes the constitutional provision that the justices of a court of appeals shall be elected by the qualified voters of their respective districts.

## A. Rule–Making Authority

As pointed out in *Polasek v. State,* 16 S.W.3d 82 (Tex.App.—Houston [1st Dist.] 2000, pet. filed) (en banc), the court of criminal appeals has held that the rule makers have no authority to make substantive changes. *Id.* at 87. This limitation is codified in section 22.108(a) of the Texas Government Code. *See* TEX.GOV'T CODE ANN. § 22.108(a) (Vernon Supp.2001) (new rules "may not abridge, enlarge, or modify the substantive rights of a litigant"). Here, the change in the rule will determine which litigant wins, in addition

---

1. In *Wilson,* however, a majority of the elected Justices voted against en banc review.

The issue I raise here, therefore, did not arise in *Wilson.*

to depriving both parties of potential constitutional rights, as examined below.

### B. Conflict with Existing Statute

In *Polasek,* I set out how the present rule constituted a substantive change from the former rule, creating a conflict with section 22.223(b) of the Texas Government Code. *See Polasek,* 16 S.W.3d at 87. The former rule and the existing statute define "en banc" in terms of members of the Court. *See* former TEX.R.APP.P. 79(d), 49 Tex. B.J. 558 (Tex.Crim.App.1986, amended 1990) (superseded effective September 1, 1997); TEX.GOV'T CODE ANN. § 22.223(b) (Vernon 1988). The new rule adds visiting judges from the original panel that decided the opinion. *See* TEX.R.APP.P. 41.2(a). On an odd-numbered court, such as ours, this creates the situation that has arisen here, as predicted in *Polasek,* in which the will of a majority of the elected Justices is defeated. *See Polasek,* 16 S.W.3d at 87.

### C. Conflict with the Federal Rule

In *O'Connor v. First Court of Appeals,* 837 S.W.2d 94 (Tex.1992), the supreme court supported its decision by pointing out that it was consistent with the federal rule guiding the circuit courts of appeals, upon which this state's panel system was modeled. *Id.* at 96. The federal rule provides that the en banc court is composed of the circuit judges who are in regular, active service. FED.R.APP.P. 35(a).

### D. Diluting the Constitution

Article 5, section 6 of the Texas Constitution provides that the justices on courts of appeals shall be elected by the qualified voters of their respective districts. TEX. CONST. art. V, § 6. Allowing the will of a majority of the elected justices on a court of appeals to be overborne by the will of a minority of the elected justices, plus one non-elected justice, dilutes the constitu-

tional provision governing the composition of the courts of appeals.

### Conclusion

For these reasons, I would hold that the rule change redefining the composition of the en banc court was not authorized and should be disregarded. Accordingly, I respectfully dissent from the denial of en banc review under conditions that stymie the will of a majority of the elected justices on this Court.

SCHNEIDER, Justice, dissenting from the denial of en banc consideration.

I would hold that the court did not err by excluding from evidence the videotapes of the complaining witness's interviews with Lisa Holcombe. Therefore, I respectfully dissent.

Appellant first attempted to introduce the tapes into evidence at the beginning of his case. The trial court ruled the tapes were inadmissible because they had not been made before charges were filed or an indictment handed down. *See* TEX.CODE CRIM.P.ANN. art. 38.071, § 2(a) (Vernon Supp.2001). After the trial court made its ruling, appellant suggested that the tapes could be used to impeach the complaining witness if she were to testify, but the trial court declined to rule prospectively on other uses of the tapes.[1] Therefore, I do not find the trial court erred when it did not admit the videotapes at this point.

Appellant attempted to introduce the tapes into evidence a second time during Lisa Holcombe's testimony, near the end of his case. The trial court again ruled the tapes inadmissible and reminded counsel that it had allowed Lisa Holcombe's testimony as extrinsic evidence of the complaining witness's prior inconsistent statements. The trial court declined to admit the tapes in their entirety, due to the lack of editing equipment. I agree with the trial court that Lisa Holcombe's testimony

---

1. While it may not have been premature to admit the videotapes as prior inconsistent statements to impeach the complaining wit-

ness as the declarant in previously admitted outcry statements, neither the parties at trial nor the trial court discussed this theory.

was an adequate substitute for the videotapes to accomplish appellant's goal of impeaching the complaining witness with her prior inconsistent statements.

Accordingly, I would hold the trial court did not err by holding the videotapes inadmissible and would affirm the trial court's judgment.