Craig Jonathan WILLOVER,
Appellant,

v.

The STATE of Texas, Appellee.

No. 01–98–01066–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 8, 2002.

Tony Aninao, Houston, for Appellant.

Matthew William Paul, State Prosecuting Attorney, Austin, Sherry L. Robinson, Criminal District Attorney, Hempstead, for the State.

Panel consists of Justices MIRABAL, TAFT, and ALCALA.

## ON REMAND FROM THE TEXAS COURT OF CRIMINAL APPEALS

ELSA ALCALA, Justice.

A jury found appellant guilty of aggravated sexual assault and assessed punishment at life in prison. On appeal, we reversed and remanded the judgment of the trial court. *Willover v. State,* 38 S.W.3d 672, 679 (Tex.App.-Houston [1st Dist.] 2000). The Court of Criminal Appeals reversed the decision of this Court and remanded the cause for us to consider appellant's remaining points of error.[1] *Willover v. State,* 70 S.W.3d 841, 847–48 (Tex.Crim.App.2002). We affirm.

### FACTS

The complainant, T.W., appellant's biological daughter, was a developmentally challenged, eight-year-old girl. One day, she pulled her pants down at school and exposed herself. On another occasion, she told the school principal that she slept up high and that her father would get on her back or on top of her. The principal referred T.W. to a professional counselor.

Timothy A. Gregory, of Children's Protective Services, was T.W.'s counselor. Gregory had approximately 5,000 hours

---

1. The State petitioned for review of the holding, by a panel of this Court, that the trial court committed reversible error by refusing to permit appellant to introduce two videotaped interviews of the complaining witness as evidence of prior inconsistent statements.

*See Willover v. State,* 38 S.W.3d 672, 676–77, 679. The Court of Criminal Appeals granted review and held that the trial court did not abuse its discretion by refusing to admit the videotaped interviews. *See Willover v. State,* 70 S.W.3d 841, 847.

experience dealing with sexually abused children. Because T.W. was not very verbal, Gregory had the child draw pictures. He asked T.W. if she remembered telling the school principal about someone hurting her. T.W. nodded and showed how she was hurt by pointing to her lower body area. When the counselor drew the outline of a human body and asked T.W. to point to the area where she was hurt, she pointed in the drawing to the area of her vagina. When asked who had hurt her, T.W. said, "Daddy." T.W. said her daddy put his "saw" or "salt" in her and that it hurt and was itchy. When asked to draw a picture of what "saw" or "salt" looks like, T.W. drew an object about 10 inches long by 2 inches wide, and said that "white, sticky stuff" comes out of it. Using two dolls, T.W. demonstrated by placing one doll on top of the other. She used a thrusting motion with the doll that represented appellant. The counselor formed the opinion that T.W. had been sexually abused.

Andrea Hardeman, an investigative caseworker with the Texas Department of Protective and Regulatory Services, received a referral regarding T.W. and went to the family home on February 14, 1997. Appellant's wife answered the door, but informed Hardeman she could not come inside because there were dogs inside that would bite. Hardeman testified that she was unable to obtain more information at that point, but left her card with instructions that appellant was to telephone her. Appellant telephoned on February 19 and scheduled an appointment, but later canceled the appointment.

Kimberly White, who was employed as lead investigator with the Waller County Children's Protective Services, related that T.W. was removed from her home due to complainant's outcry of sexual abuse allegedly committed by appellant. White testified that T.W. and her brother were placed in a therapeutic foster home, where their behavior and demeanor improved.

Lisa Holcombe, a counselor at the Children's Assessment Center, interviewed T.W. on April 3, 1997 and June 6, 1997. During the first interview, T.W. said that her brother, and no one else, had touched her private parts. During the second interview, T.W. told Holcombe that appellant touched her private part with a stick. Holcombe was unable to conclude from the two interviews that appellant had sexually abused T.W.

Dr. Mariam Chacko, an attending physician at the Child Protective Health Clinic at Texas Children's Hospital, examined eight-year-old T.W. on April 17, 1997. Examination of the external portion of the vulva and the vaginal opening showed no abnormalities. Examination of the anal area revealed a scar. When Dr. Chacko asked T.W. if her father had touched her anal area with his "privates," she nodded yes and said this occurred in the bathroom. In Dr. Chacko's opinion, the condition of T.W.'s anal area was consistent with trauma from sexual abuse. Dr. Chacko testified that although there was no way to tell the age of the scarring, it was consistent with sexual abuse. Vickie Smith, a therapist for a therapeutic foster care agency called the Arrow Project, had been T.W's therapist for a year. When she testified at trial, Smith, who was familiar with characteristics exhibited by sexually abused children, observed the same characteristics in T.W. as Dr. Chacko.

Appellant called T.W. to testify. T.W. testified on direct examination that appellant did not touch her private parts. On cross-examination, however, she testified that appellant put his "P" in her "P" and in her "butt." On redirect examination, appellant's counsel brought Lisa Holcombe into the courtroom and asked T.W. if she

remembered speaking with Holcombe the year before. T.W. agreed with appellant's counsel that she had told Holcombe that appellant had put his "P" in her "P" and "behind" four times.

We considered only appellant's first point of error in our previous disposition of this case. *Willover*, 38 S.W.3d at 679. We now consider appellant's remaining seven points of error.

## EXTRANEOUS CRIME OR BAD ACT

In his fifth and sixth points of error, appellant contends (1) the trial court committed fundamental error at the punishment stage by failing to instruct the jury not to consider appellant's extraneous crimes or bad acts unless they were proven beyond a reasonable doubt and (2) the trial court erred by not defining the term "beyond a reasonable doubt." Appellant specifically points to his Pennsylvania misdemeanor convictions as the extraneous crimes or bad acts.

At the punishment stage of a noncapital prosecution, evidence may be offered by either party "as to any matter the court deems relevant to sentencing" including, but not limited to, the defendant's prior criminal record, his reputation and character, the circumstances of the offense, and extraneous crimes and bad acts shown beyond a reasonable doubt to have been committed by the defendant. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2002). Only extraneous crimes and bad acts must be shown beyond a reasonable doubt. *See id; Sanders v. State*, 69 S.W.3d 690, 692–94 (Tex.App.-Texarkana 2002, pet. dism'd w.o.j.).

In this case, appellant's prior misdemeanor convictions are not evidence of extraneous crimes and bad acts. Rather, they constitute a prior criminal record. Therefore, appellant was not entitled to an instruction that extraneous crimes and bad

acts be proved beyond a reasonable doubt. We hold that the trial court did not err by not including this instruction in the charge to the jury.

We overrule appellant's fifth and sixth points of error.

The rest of the opinion does not meet the standards for publication and is ordered not to be published. *See* TEX.R.APP. P. 47.4. The judgment is affirmed.